IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THOMAS F. SCHMIDT, | ) | CV. NO. 05-00480 DAE/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLSTATE INSURANCE | ) | |
| COMPANY, an Illinois Corporation; | ) | |
| JOHN DOES 1 through 10; JANE | ) | |
| DOES, 1 through 10; DOE | ) | |
| CORPORATIONS, | ) | |
| PARTNERSHIPS , and/or OTHER | ) | |
| ENTITIES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On May 4, 2007, the Court heard Defendant's Motion.  Michael R.

Goodheart, Esq., appeared at the hearing on behalf of Plaintiff; Kevin P.H. Sumida,

Esq., appeared at the hearing on behalf of Defendant.  After reviewing the motion

and the supporting and opposing memoranda, the Court GRANTS IN PART AND

DENIES IN PART Defendant's Motion.

## BACKGROUND

This action arises from Defendant's alleged breach of contract and bad faith for failing to provide Plaintiff, as its insured, with property loss benefits for items that were purportedly stolen on four separate occasions (May 6, 2002, December 2003-January 2004, March 1, 2004 and October 24, 2004) from three different locations.

In the Complaint, Plaintiff alleges that he is an insured of Defendant under a homeowner's policy and/or under a renter's policy.  Plaintiff claims that on May 6, 2002, thieves stole items from his house and garage at 73-4613 Kukuki St.  On December 27, 2003 to January 2, 2004, thieves stole items from Plaintiff's garage located at 73-1472 Hookele St.  In 2004, thieves broke into Plaintiff's temporary living quarters at 73-1245 Mahi St. and stole a Rolex watch and an Elephant Tail bracelet.  Finally, on October 24, 2004, thieves again broke into Plaintiff's garage at 73-4613 Kukuki St. and stole various items.  Plaintiff reported each loss to Defendant and Defendant has not paid Plaintiff for the losses.

A.    The Allstate Policy

The Allstate Deluxe Homeowner's Policy provides that in the event of a loss to any property, the insured must promptly give notice to Allstate, and within 60 days of the loss, give a signed, sworn proof of the loss, which includes

2

information regarding the date, time, location and cause of the loss, interests of other persons in the property, and other pertinent information.  (Def. Ex. V.)  The policy also provides that "[n]o suit or action may be brought against [Allstate] unless there has been full compliance with all policy terms.  Any suit or action must be brought within one year after the inception of loss or damage."  (Id.)

Neither party has presented any evidence that Plaintiff was covered under a Deluxe Homeowner's Policy, but they concede that he appears to have been so covered at least for the later losses.  With respect to the May 2002 loss, however, Plaintiff alleges he made claims of losses under his renter's policy.

B.   May 2002 Loss

On or about May 6, 2002, Plaintiff's property was allegedly stolen from a home and garage located on Kukuki St., which is owned by his son Damon. Defendant states that Plaintiff did not report this loss until September 2002, and that when Allstate met with Plaintiff to investigate the claim, Allstate was informed that the incident occurred at his son Damon Schmidt's residence.  Allstate was further informed that Plaintiff claimed he was assaulted on May 6th and that construction machinery which was used in remodeling Damon's house was vandalized.  (Tabor Decl. ¶ 26.)

Allstate was concerned whether the stolen property was Plaintiff's or Damon's property, and was concerned that Plaintiff's property may not be covered under Damon's homeowner's policy.  Plaintiff, however, states that he made this claim under his renter's policy.

On November 21, 2002, Defendant sent a letter to Damon Schmidt at the Hookele St. address referencing claim number 1931921629.  The unsigned letter states that Damon should refer to his Allstate Deluxe Homeowners Policy to determine what he must do after a loss and asked that he return a Sworn Statement of Proof of Loss.  (Def. Ex. A.)  The Proof of Loss statement was not returned.  On May 28, 2003, Attorney John Carroll sent Allstate a letter referencing the same claim number and stating that Plaintiff had retained him.  Mr. Carroll asked that Allstate advise him as to what documentation is needed and to direct all further correspondence to Carroll's office.  (Def. Ex. B.)  Despite Plaintiff's counsel's instructions to correspond with him, Allstate sent an unsigned letter on July 17, 2003, again to Damon at the Hookele St. address, referencing the same claim number and stating that it had received the letter from Mr. Carroll for injuries sustained by Plaintiff on Damon's premises.  (Def. Ex. C.)  The letter states that the claim number involves "vandalism to your personal property, a claim that I believe your father, Tom Schmidt, was working on until your return from a trip earlier this

4

year." (Def. Ex. B.) Allstate again asked Damon to return a Proof of Loss statement.

On September 16, 2003, Allstate informed Damon that it will close the claim due to his lack of cooperation. It is undisputed that Allstate never sent a Proof of Loss statement to Plaintiff.

C.      December 2003 to January 2004 Loss

Plaintiff claims that from December 27, 2003, to January 2, 2004, thieves stole items from his garage located at 73-1472 Hookele St. Plaintiff informed Allstate of this claim on January 8, 2004. Allstate sent Plaintiff a letter requesting a Proof of Loss statement and documentation supporting the claim. Plaintiff returned the completed Proof of Loss statement, but no documentation of the alleged loss. Between February and August 2004, Allstate sent Plaintiff several letters requesting documentation of his claim. Plaintiff did not respond to many of the letters. Some of the letters requested that Plaintiff provide his tax returns and/or sign an authorization for release of tax records. Plaintiff sat for an examination under oath in May, during which he claims that he informed Allstate that he had not filed any tax returns. Despite this alleged statement by Plaintiff, Allstate continued to send letters to Plaintiff requesting his tax returns or an authorization for release of the returns.

On August 3, 2004, Allstate sent its tenth letter to Plaintiff and inquired about the tax authorizations.  Allstate informed Plaintiff that it would close its file if it did not receive signed forms by August 16, 2004.  The authorizations were not returned.  On November 9, 2004, Allstate sent yet another copy of the tax authorization pursuant to Plaintiff's request.  On December 12, 2004, Allstate informed Plaintiff that the claim was closed since Plaintiff refused to cooperate by not providing his tax returns.  Allstate claims that it needed Plaintiff's tax returns because the items allegedly stolen were tools and equipment used in Plaintiff's construction business.

D.      March 1, 2004 and October 24, 2004 Losses

Plaintiff claims that on March 1, 2004, thieves broke into his temporary living quarters at 73-1245 Mahi St. and stole a Rolex watch and an Elephant Tail bracelet.  On October 24, 2004, thieves again broke into Plaintiff's garage at 73-4613 Kukuki St. and stole various items.

Plaintiff notified Defendant of both of these claims on February 17, 2005, eleven months after the March 2004 loss, and over four months after the October 2004 loss.  In the same notification letter, Plaintiff stated that if these claims, along with the claims for the December 2003 to January 2004 loss were not resolved in one month, he would file a bad faith lawsuit against Allstate.

6

On February 23, 2005, Allstate sent a letter to Plaintiff referencing the December 2004 loss and that claim number.  The body of the letter states that Allstate is not presently aware of any claims regarding a March 1, 2004, or October 24, 2004 loss and states "we would appreciate your client forwarding to us a copy of his proofs of claim or any notice of loss which he previously submitted to Allstate for those losses."   (Def. Ex. U.)  Plaintiff did not respond to this letter.

On August 1, 2005, Plaintiff filed the instant Complaint alleging breach of contract and bad faith.  On February 20, 2007, Allstate filed the instant motion for summary judgment.  Plaintiff filed an opposition on April 13, 2007, and Allstate filed a reply on April 24, 2007.  Allstate argues that it is entitled to summary judgment because Plaintiff failed to cooperate and in addition a one-year statute of limitations bars Plaintiff's claims for all losses other than his October 2004 loss.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891

7

(9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).

A main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

      Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial–usually,

but not always, the defendant–has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u>

<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

      Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and  may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

9

## DISCUSSION

Defendant argues that Plaintiff failed to cooperate by providing documents supporting his claims for losses, such as Proof of Loss statements and tax returns or authorizations for release of such returns, and therefore, his breach of contract and bad faith claims are barred.  Plaintiff claims that he complied with the requirements to the best of his ability.  Plaintiff asserts that for the May 2002 loss, Allstate never sent him the Proof of Loss statement, but only sent such paperwork to his son.  With respect to the December 2003 and January 2004 loss, Plaintiff argues that the policy does not require him to provide tax returns, and even if it did, he never filed tax returns and therefore could not provide copies of such documents or provide an authorization to release such returns.  With respect to the March and October 2004 losses, Plaintiff argues that Allstate never requested a Proof of Loss statement.

Neither party discusses which law to apply to determine the validity or meaning of a clause in the insurance policy, neither party states whether the insurance policy includes a choice of law provision, and both parties cite cases applying state law from many different states.  Nonetheless, as Plaintiff, the insured, is domiciled in Hawaii and experienced the property losses in Hawaii, this Court will apply Hawaii law.

Insurance policies are contracts and therefore "subject to the general rules of contract construction." Tri-S Corp. v. West. World Ins. Co., 135 P.3d 82, 98 (Haw. 2006). An insurance policy must be construed according to the entirety of its terms. Haw. Rev. Stat. § 431:10-237. Any ambiguity or doubts must be resolved in favor of the insured and against the insurer since "insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys." Tri-S Corp., 135 P.3d at 98.

In general, cooperation clauses are deemed valid since the "insurer has a right as a matter of law to know from the assured [sic] the facts upon which the insured asserts his claim, in order to determine for itself whether it should contest or attempt to settle the claim." Yuen Shee v. London Guarantee & Acc. Co. & General Acc., Fire & Life Ins. Corp., NO. 2882, 1953 WL 7558, at *8 (Haw. Terr. June 2, 1953). The insurer bears the burden of proving that the insured failed to cooperate in violation of the cooperation clause. Id. at *9. The insurer must prove lack of cooperation in some "substantial and material respect," such that the insurer was prejudiced by the failure to cooperate. Id. at *8; see also Wood v. Allstate Ins. Co., 21 F.3d 741, 745 (7th Cir. 1994) (noting that "some courts, including Indiana courts, 'have adopted the rule that the insured's violation of a cooperation clause constitutes a defense to the insurer only where it can show that it was substantially

11

prejudiced by such violation.'") (citation omitted).  Whether or not the insured has in fact cooperated is generally held a question of fact for the jury.  Yuen Shee, 1953 WL 7558 at *8.

In Barabin v. AIG Haw. Ins. Co., Inc., 921 P.2d 732, 737 (Haw. 1996), the insurance policy provided that the insurance carrier had "no duty to provide any coverage under this policy unless there has been full compliance with the following duties: . . . A person seeking any coverage must: . . . Submit, as often as we reasonably require: . . . to examination under oath and subscribe to the same."  921 P.2d at 733.  The insured refused to submit to an examination under oath.  The Hawaii Supreme Court affirmed summary judgment against the insured, finding the cooperation clause to be valid and unambiguous.  Id. at 737.

In Wood v. Allstate Ins. Co., the court analyzed the same Allstate policy language that is at issue in this case and found that the provisions are clear and unambiguous that the insured must fully comply with the terms of the policy before suit may be maintained against the insurer.  815 F. Supp. 1185, 1193 (N.D. Ind. 1993), rev'd on other grounds, 21 F.3d 741 (7th Cir. 1994).

A.   May 2002 Loss

Here, with respect to the May 2002 loss, there are genuine issues of fact as to whether the cooperation clause even applies.  Based upon two different

12

letters from Plaintiff's counsel, it appears that Plaintiff was a renter at his son

Damon's property and that Damon owned the two properties located at Hookele St.

and on Kukuki St.  (Def. Exs. N, T.)   Allstate has been acting as if property stolen

from Kukuki St. would fall under Damon's homeowner's policy as they sent letters

only addressed to Damon to his Hookele address.  Plaintiff, in his Complaint,

alleges that the property was stolen from Kukuki St., and in his opposition states

that he, not his son Damon, made a claim for this stolen property under his renter's

insurance policy.[1]  Defendant, however, did not provide this Court with a copy of

Plaintiff's renter's policy, nor did it state that Plaintiff only had a homeowner's

policy.  Accordingly, this Court cannot determine whether the renter's policy, like

the homeowner's policy, contained a duty to cooperate.  Moreover, Allstate only

sent the Proof of Loss statements to Damon, not to Plaintiff.  Thus, even if the

homeowner's policy applied, Defendant has not shown that Plaintiff was aware of

his duty to cooperate.  Finally, although neither party produced evidence that

Plaintiff diligently pursued this claim, Allstate has not argued how it has been

prejudiced.

---

[1]It also appears that Damon may have made a separate claim for the property stolen from Kukuki St. under his homeowner's policy through Allstate.  (Def. Ex. N.)  Damon is not a party to this lawsuit.

13

Thus, there are issues of fact as to which policy applies to Plaintiff's claimed loss, whether that policy includes a duty to cooperate, and whether at some reasonable point in time Plaintiff was aware that he was required to submit a Proof of Loss statement with respect to the May 2002 loss. For these reasons, this Court cannot grant summary judgment in favor of Allstate with respect to the May 2002 loss.

B.    December 2003 through January 2004 Loss

With respect to the December 2003 through January 2004 loss, the parties apparently agree that the homeowner's policy applies to the loss. There is no specific provision in the policy requiring insureds to provide tax returns as part of their duty to cooperate. Although the contract can reasonably be interpreted to allow an insurer to request such documents, and it may have been reasonable to so request such returns, Plaintiff states that he never filed such returns and therefore cannot provide them. The evidence shows that Plaintiff may have been leading Defendant to believe that the forms existed since Allstate claims that Plaintiff only told them that he did not have the forms and did not specify earlier than his opposition to the instant motion that he did not file the returns. Furthermore, Plaintiff did not clarify this allegedly mistaken belief even after numerous requests

14

from Allstate to provide such forms.  Therefore, there is a credibility issue as to whether Plaintiff filed tax returns and whether he so informed Allstate in timely fashion that he did not file tax returns for the period in question.  Accordingly, this Court cannot find, as a matter of law, that Plaintiff failed to cooperate.

C.      March 1, 2004 and October 24, 2004 Loss

With respect to the March 1, 2004 and October 24, 2004 loss, Allstate claims that on February 23, 2005, it asked Plaintiff to provide a Proof of Loss statement.  It is undisputed that Plaintiff did not do so.  Plaintiff's only argument in opposition is that the February 23, 2005 letter only requested proofs of claims which he previously submitted to Allstate.

In the light most favorable to Plaintiff, as the insured and the non-moving party, this Court finds that the letter does not clearly ask for a proof of loss statement with respect to the March and October 2004 losses.  The language in the letter requests copies of proofs of claim or any notice of loss which Plaintiff previously submitted to Allstate for those losses.  The letter then goes on to discuss the closure of his two previous claims.  Although Plaintiff should have known that a Proof of Loss statement was required since he had provided such statement with respect to his December 2003 and January 2004 loss, the letter does not appear to

have enclosed a copy of the Proof of Loss statement for Plaintiff to complete and return, and Allstate does not claim that such document was enclosed or ever provided to Plaintiff.

While Plaintiff may have difficulty proving his claims at trial, since he has by no means acted as a model insured, he seriously delayed in filing his claims of loss, and led Allstate to believe that tax forms existed, yet at the same time refused to produce them, this Court cannot determine, with the state of the evidence, that as a matter of law, Plaintiff failed to cooperate.  Plaintiff has created genuine issues of fact as to which policy applies to the May 2002 loss, whether Allstate provided him with the Proof of Loss statements that it has said he failed to complete for the May 2002 and March and October 2004 losses, and with respect to whether he actually filed the tax returns that Allstate seeks.  Plaintiff has provided evidence that with respect to each claim of loss he has provided at least some cooperation.  An issue of fact remains, however, whether Plaintiff's failure to completely cooperate constitutes a substantial lack of cooperation. Further, Allstate has not argued how it has been prejudiced.

D.     One-Year Statute of Limitations

Defendant next argues that Plaintiff's breach of contract and bad faith claims with respect to all losses, other than the October 2004 loss, are barred by the one-year statute of limitations set forth in the Allstate Deluxe Homeowner's policy.

The statute of limitations for a breach of contract claim is six years. Haw. Rev. Stat. § 657-1.  The statute of limitations for tort claims is two years. Haw. Rev. Stat. § 657-7.  A claim of bad faith is a tort claim.  See Best Place, Inc. v. Penn America Ins. Co., 920 P.2d 334 (Haw. 1996).  An insurance contract may reduce these statutes of limitations periods and require that any cause of action be brought one year after the date of loss.  Haw. Rev. Stat. § 431:10-221 ("In contracts of property insurance, . . .  the limitation [of a right of action] shall not be to a period of less than one year from the date of the loss.").  The Allstate Deluxe Homeowner's policy provides that "[a]ny suit or action must be brought within one year after the inception of loss of damage."  (Def. Ex. V.)

The Complaint alleging breach of contract and bad faith was filed on August 1, 2005.  As set forth above, it is unclear whether the Allstate Homeowner's policy applies to the May 2002 loss.  Accordingly, there is no evidence that a one-year statute of limitations applies to this loss.  As the

17

Complaint was filed over three years after the loss, Plaintiff's bad faith claim is barred, but his breach of contract claim for that loss is not barred.

With respect to the December 2003 to January 2004 loss, Plaintiff does not dispute that the Allstate Deluxe Homeowner's policy applies to these losses. Plaintiff argues, however, that the one-year period was tolled while Allstate was investigating the claim.

In Wright v. State Farm Mut. Auto. Ins. Co., the court tolled the two-year statute of limitations period for injuries resulting from car accidents. 949 P.2d 197, 202 (Haw. App. 1997). The court tolled the statute of limitations for the period of time that the claim was being investigated since the plaintiff made a claim for benefits to the insurer within the two-year period. Id. In evaluating the no-fault law with respect to car accident claims, the court found that

> it is consistent with the purpose of the no-fault law to permit an insured to bring suit upon an unresolved claim after the two-year statute of limitations under HRS § 294-36(a)(2) has expired, provided the insured has made the claim for benefits before the running of the limitations period. To hold otherwise than we do would reward a delay in the disposition of an insured's claim, which effectively nullifies the insured's statutory right to arbitration of a disputed no-fault claim.

Id.

In <u>Hayes v. Dutro</u>, 93 P.3d 1173 (Haw. App. 2004), the court held that a "claim for UM benefits, proffered within the period prescribed by the governing statute of limitations as set forth in HRS § 249-36(a) [sic], will toll the running of the statute until such time as the claim is denied." <u>Id.</u> at 1180.  Applying reasoning similar to the <u>Wright</u> case, the court found that "[t]he legislature could not have intended to allow insurers to extinguish an insured's right to UM benefits merely by delaying its response to the insured's claim until the statute of limitations has run." <u>Id.</u>

Similarly, here, the legislature could not have intended to allow an insurer to limit a six or two-year statute of limitations to only one year in a contract of adhesion and yet at the same time allow the insurer to delay closing or responding to a claim for benefits until that one-year period has expired.

In the instant case, Plaintiff filed his claims for the December 2003 and January 2004 loss with Allstate on January 8, 2004.  On December 12, 2004, Allstate informed Plaintiff that the claim was closed since Plaintiff refused to cooperate by not providing his tax returns.  Plaintiff filed the instant lawsuit on August 1, 2005.  If the time that Plaintiff's claim was pending with Allstate is tolled (e.g. from January 8, 2004 to December 12, 2004), then Plaintiff has filed his lawsuit within the one-year statute of limitations.  Although Plaintiff is clearly at

19

fault for part of the delay in the investigation of his losses by not making it abundantly clear to Allstate that he had not actually filed his tax returns and instead leading them to believe that he may sign authorizations for such records, it is unclear whether Allstate is also at fault for the one-year period of time it took to close his claim.  Accordingly, resolving doubts in favor of the insured, who is also the non-moving party, as this court must, the one-year statute of limitations period should be tolled and Plaintiff's breach of contract claim and bad faith claim with respect to the December 2003 and January 2004 loss are not barred.

With respect to the March 1, 2004 loss, Plaintiff did not even notify Allstate of this loss until February 17, 2005, more than eleven months after the date of loss.  Plaintiff then never provided Allstate with documents supporting such loss and did not follow up with Allstate other than threatening to file the instant lawsuit and doing so on August 1, 2005.  Accordingly, although Allstate apparently did not provide Plaintiff with a Proof of Loss statement, Plaintiff was certainly aware that he needed to provide documents supporting his claim, especially in light of his previous experience in making claims.  Therefore, Plaintiff has presented no evidence that Allstate was at fault for any delay in the investigation of the March 1, 2004 loss.  Accordingly, there is no reason to toll the statute of limitations on this claim and Plaintiff's claim for this loss is barred.

20

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.  Plaintiff's breach of contract claim with respect to his May 2002 loss, Plaintiff's breach of contract and bad faith claims with respect to his December 2003 and January 2004 loss, and Plaintiff's breach of contract and bad faith claims with respect to his October 2004 loss may go forward.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 11, 2007



_____
David Alan Ezra
United States District Judge

Thomas F. Schmidt vs. Allstate Insurance Company, et al., CV No. 05-00480 DAE/KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT